UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


6315 MAGAZINE, LLC                                    CIVIL ACTION

VERSUS                                               NO. 20-1472

FLOT NOLA, LLC, BOUYANCE, INC.,                      SECTION M (4)
THE FLOAT CONFERENCE, L.L.C.,
RESET, L.L.C, INTERNATIONAL
THERAPEUTIC FLOATATION
CONFERENCE, L.L.C., CECIL
ROEBUCK, AND LYDIA BREIGHNER


**<u>ORDER & REASONS</u>**

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure filed by defendants Cecil Roebuck, Lydia Breighner, Float Nola, LLC f/k/a Flot

Nola, LLC ("Flot Nola"), Reset, LLC ("Reset"), International Therapeutic Floatation

Conference, LLC ("ITFC"), Bouyance, Inc. ("Bouyance"), and The Float Conference LLC

("TFC") (collectively, "Defendants").[1]  Plaintiff 6315 Magazine, LLC ("Plaintiff") responds in

opposition,[2] and Defendants reply in further support of their motion.[3]  Having considered the

parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons

granting the motion as to Plaintiff's claims brought under the Racketeer Influenced and Corrupt

Organization Act ("RICO"), 18 U.S.C. § 1962(c) & (d), and dismissing Plaintiff's pendent

Louisiana state-law claims pursuant to 28 U.S.C. § 1367(c)(3).

---

[1] R. Doc. 24.
[2] R. Doc. 30.
[3] R. Doc. 33.

I.     **BACKGROUND**

This matter concerns a breached lease agreement.  Plaintiff owns real property located at 6024 Magazine Street in New Orleans, Louisiana ("the premises").[4]  Roebuck and Breighner are the vice-president and president, respectively, of Flot Nola, a floatation therapy spa.[5]   On September 13, 2018, Roebuck and Breighner, acting on Flot Nola's behalf, entered into a lease for the premises.[6]  Roebuck and Breighner personally guaranteed the lease.[7]  The lease term was from October 1, 2018, to December 31, 2028.[8]   Because the premises were gutted, Plaintiff agreed to pay $104,000 of the construction costs for Flot Nola to build out the property to meet its needs.[9]

Roebuck and Breighner, acting individually and on Flot Nola's behalf, submitted to Plaintiff a business plan as part of the lease negotiations and application.[10]  Plaintiff alleges that the business plan falsely stated that Roebuck had a master's degree and Ph.D. to support the notion that Roebuck had the ability and background to develop the float therapy business.[11] Plaintiff also alleges that Flot Nola sent Plaintiff an email with false financial information.[12]

Plaintiff alleges that Flot Nola, Roebuck, and Breighner breached the lease from its inception by failing to: (1) pay the rent timely; (2) pay the late fees associated with the past due rent; (3) pay the property taxes due under the lease; (4) comply with the method of payment set forth in the lease; (5) pay the insurance premiums due under the lease; (6) maintain the premises; (7) prevent liens from being placed on the property; (8) provide commercial insurance covering

---

[4] R. Doc. 1 at 8.
[5] *Id.* at 2-3.
[6] *Id.* at 9.
[7] *Id.* at 2-3 & 9-10.
[8] *Id.* at 2 & 10.
[9] *Id.*
[10] *Id.* at 3.
[11] *Id.*
[12] *Id.* at 3-4.

the property; and (9) acquire the appropriate licenses and permits.[13]  According to Plaintiff, Flot Nola, Roebuck, and Breighner improperly diverted to their personal use at least $70,000 of the $104,000 earmarked for the build-out,[14] and that this "misuse of the build out funds is … a part of a continuing fraudulent scheme to bilk Plaintiff and others in order to support a scam business centered upon the solicitation of subscriptions and memberships for flotation therapy spas and conferences that are essentially dysfunctional and/or non-existent."[15]  Plaintiff claims that Flot Nola never operated as a going concern.[16]

Plaintiff filed in state court three eviction suits against Flot Nola.[17]  Trial on the third eviction suit was held on March 2, 2020; and, on March 16, 2020, the court granted Plaintiff's petition for eviction requiring Flot Nola to vacate the premises.[18]  Plaintiff alleges that Roebuck and Breighner took immovable fixtures from, and caused damage to, the premises before vacating it.[19]  Plaintiff further alleges that, on March 25, 2020, Roebuck contacted by mail or email RTW Construction, LLC ("RTW"), a creditor of Flot Nola, in an attempt to have RTW place a lien on the premises for unpaid construction work.[20]

Plaintiff alleges that Roebuck's and Breignher's behavior with respect to the Flot Nola lease is part of a larger scheme.  In a section of the complaint titled "The Buoyance Scheme" Plaintiff describes a flotation spa business called Euphoric Composure ("Euphoric") that was started by Roebuck and Breighner in Virginia in 2007.[21]  Roebuck and Breighner sold Euphoric

---

[13] *Id.* at 10.
[14] *Id.* at 2 & 11.
[15] *Id.* at 4.
[16] *Id.* at 4-5.
[17] *Id.* at 10.
[18] *Id.* at 10-11.
[19] *Id.* at 10-12.
[20] *Id.* at 12.
[21] *Id.* at 5-7.

in 2010 for $50,000 in cash and owner-financed debt.[22]   After a few months, they placed the purchaser in default and repossessed the equipment.[23]

In 2011, Roebuck and Breighner opened Buoyance, another flotation therapy spa, in North Carolina.[24]   They sold Buoyance, along with its spa equipment, client lists, current memberships, and other assets on January 31, 2018.[25]   Roebuck signed the sale agreement on Buoyance's behalf.[26]   Plaintiff alleges that Roebuck and Breighner falsely overstated the value of Buoyance's assets and recurring revenue, misrepresented the condition of the equipment, and filed false financial statements and income tax returns in connection with the sale.[27]   Further, Plaintiff alleges that Roebuck interfered in the sale agreement by refusing to transfer and assign Buoyance's building lease to the buyers.[28]   On May 16, 2019, Roebuck allegedly arrived at Buoyance's former location, gave the new owners a letter, and ordered them to vacate because Buoyance was still on the lease and the buyers were late with their payments on the sale agreement.  Roebuck then changed the locks and seized all of the equipment.[29]

Plaintiff also alleges that Roebuck and Breighner created and advertised at least two "false" therapeutic conferences, ITFC and TFC, which both solicited and received services and money from various venues, suppliers, and public subscribers, using the mail and internet solicitations.[30]   Plaintiff contends that the conferences were never held and that Roebuck and Breighner diverted the funds to their own use.[31]

---

[22] *Id.* at 5.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 5 & 13.
[26] *Id.* at 13.
[27] *Id.* at 5-6 & 13-15.
[28] *Id.* at 16.
[29] *Id.* at 16-18.
[30] *Id.* at 7.
[31] *Id.*

Finally, Plaintiff alleges that Flot Nola, in two separate loans, borrowed $160,000 from the Granoff Trust, securing the loans with income from the sale of Buoyance and with physical assets of Flot Nola that were either fixtures of the premises or had been promised to other vendors.[32]  The loan proceeds were allegedly deposited into Breighner's bank account, and the Granoff Trust has never been repaid.[33]

Plaintiff filed this action on May 18, 2020, alleging that Roebuck's fraudulent business activities constitute a pattern of racketeering in violation of RICO, 18 U.S.C. §1962(c), and that Defendants conspired to violate RICO as prohibited by 18 U.SC. § 1962(d).[34]  Plaintiffs also allege Louisiana state-law claims, including: (1) fraud against Defendants; (2) damage to the premises and conversion against Roebuck, Breighner, and Flot Nola; (3) breach of the lease and breach of a consent judgment against Flot Nola; and (4) libel and harassment against Roebuck.[35]  Plaintiff seeks attorney's fees from all Defendants under RICO or the lease agreement.[36]

## I.   PENDING MOTION

Defendants argue that Plaintiff's complaint does not state a RICO claim against Roebuck under § 1962(c) because Plaintiff fails to allege sufficient facts demonstrating that Roebuck conducted an association-in-fact enterprise through a pattern of related and continuous acts of mail and wire fraud or that Plaintiff was injured as a result of any such activity.[37]  Defendants also argue that Plaintiff cannot state a RICO conspiracy claim under § 1962(d) because Plaintiff has not stated a claim under § 1962(c), and alternatively, because Plaintiff does not allege sufficiently any agreement between the Defendants to violate RICO.[38]  Further, Defendants

---

[32] *Id.*
[33] *Id.*
[34] R. Doc. 1 at 8 & 18-24.
[35] *Id.* at 8 & 24-31.
[36] *Id.* at 31-32.
[37] R. Doc. 24-1 at 5 & 7-16.
[38] *Id.* at 5 & 15-16.

argue that Plaintiff either cannot maintain as a matter of law, or fails to adequately allege facts supporting, claims for: (1) fraud against all Defendants; (2) harassment and libel against Roebuck; (3) violation of the consent judgment against all Defendants; and (4) attorney's fees against any Defendant except Flot Nola.[39]

In opposition, Plaintiff argues that it stated a plausible RICO claim by alleging that Roebuck, together with an association-in-fact enterprise consisting of the entities he owned and operated, used fraudulent mail and email communications to conduct a pattern of racketeering activity with the common purpose of economic gain for Roebuck.[40]  Plaintiff argues that its factual allegations of related and continuous acts of mail and wire fraud undertaken by Roebuck are sufficient, pointing to what it contends are specific predicate acts alleged in the complaint.[41] Finally, Plaintiff argues that it was damaged by the alleged racketeering activity when: (1) Flot Nola, Roebuck, and Breighner fraudulently converted the build-out money to their personal use; (2) Flot Nola breached the lease; and (3) Roebuck and Breighner removed fixtures from, and caused damage to, the premises.[42]  Plaintiff argues that it has adequately alleged each state-law claim.[43]  Moreover, Plaintiff argues that as guarantors of the lease, Roebuck and Breighner, along with the lessee, Flot Nola, are liable for attorney's fees thereunder, and all Defendants are liable for attorney's fees under RICO.[44]

---

[39] *Id.* at 5-6 & 16-19.
[40] R. Doc. 30 at 4-9.
[41] *Id.* at 9-14.
[42] *Id.* at 14-15
[43] *Id.* at 16-19.
[44] *Id.* at 19-20.

## III.   LAW & ANALYSIS

### A.  The Legal Standards

#### 1.      Rule 12(b)(6) of the Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453,

457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2.      Rule 9(b) of the Federal Rules of Civil Procedure

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard on allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Put simply, complying with Rule 9(b) requires a plaintiff to "set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citation omitted).  Thus, a plaintiff alleging fraud "cannot rely on speculation or conclusional allegations." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 1992).  "Rule 9(b)'s particularity requirement applies to RICO claims that rest on predicate acts of mail and wire fraud." *Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, 2017 WL 6055167, at *6 (E.D. La. Dec. 7, 2017) (citing *Williams*, 112 F.3d at 177; *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990)).  "A dismissal

for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009) (citation and internal quotation marks omitted).

### B. RICO Claims

Plaintiff asserts RICO violations against Roebuck pursuant to 18 U.S.C. § 1962(c) and against all Defendants pursuant to 18 U.S.C. § 1962(d).  RICO prohibits certain conduct involving a pattern of racketeering activity and "protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful activity is committed.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001) (citation omitted).  "RICO creates a civil cause of action for any person injured in his business or property by reason of a violation of section 1962." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (quotation and citation omitted).

Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  And § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."[45]  *Id.* § 1962(d). "Section 1962(d), unlike § 1962(c), is not a substantive RICO offense; rather, § 1962(d) merely makes it illegal to conspire to violate any of the preceding sections of the statute." *United States v. Quintanilla,* 2 F.3d 1469, 1484 (7th Cir. 1993) (citations omitted).

---

[45] Subsection (a) prohibits a person from investing income derived from a pattern of racketeering activity in an enterprise that is engaged in or affecting interstate or foreign commerce.  18 U.S.C. § 1962(a).  Subsection (b) prohibits a person from using a pattern of racketeering activity to gain an interest in or control of an enterprise engaged in or affecting interstate or foreign commerce.  *Id.* § 1962(b).  Neither of these subsections applies to this case as Plaintiff asserts no such claim.

To plead a RICO claim under any subsection of § 1962, a plaintiff must allege "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted).  To withstand a motion to dismiss, a civil RICO plaintiff must allege facts sufficient to establish each of these essential elements.  *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); *see also Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) (observing that each of RICO's essential elements "is a term of art which carries its own inherent requirements of particularity").

As to the first element of a RICO claim, a "person" is defined broadly under the statute as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  The Fifth Circuit has explained, though, that in "restrict[ing] RICO to the type of conduct Congress intended to proscribe, the RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering."  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988).  A "RICO person cannot employ or associate with himself."  *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).  Thus, a plaintiff asserting a § 1962(c) violation must establish the existence of a "person" and an "'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions*, 533 U.S. at 161; *see also Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (noting that the "person" who engaged in racketeering "must be distinct from the enterprise whose affairs are thereby conducted").

Acts of "racketeering activity," commonly known as "predicate acts," are defined in § 1961(1) by a list of various state and federal crimes, which includes the federal crimes of mail and wire fraud.  18 U.S.C. § 1961(1)(B) ("any act which is indictable under any of the following

provision of title 18, United States Code: … section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) …").  The existence of a "pattern" of racketeering activity "requires at least two acts of racketeering activity … the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  The Supreme Court has interpreted this requirement to include two elements: (1) the predicate acts must be related; and (2) the acts must amount to or pose a threat of continuing criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1989).   "Predicate acts are 'related' if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *In re Burzynski,* 989 F.2d 733, 742 (5th Cir. 1993) (quoting *H.J. Inc.,* 492 U.S. at 240).  Continuity is a "temporal concept" that "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241-42 (citation omitted).  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."  *Id.*   An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "predicates [that] are a regular way of conducting defendant's ongoing legitimate business."  *Id.* at 242-43.  Whether the acts establish a threat of "continued racketeering activity" is a fact-specific inquiry.  *Id.* at 242.  The relatedness and continuity elements "keep civil RICO focused on the long-term criminal conduct Congress intended it to address, and prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law."  *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (quotation marks and citations omitted).

"To establish a RICO 'enterprise,' a plaintiff must provide evidence of the existence of

an entity separate and apart from the pattern of racketeering activity." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 736 (5th Cir. 2019) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).   "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. 1961(4).  "The entity does not have to be a formal or legal entity, but … it must exist for purposes other than just to commit predicate acts." *Walker*, 938 F.3d at 738 (citations omitted).   An informal enterprise, known as an association-in-fact enterprise, is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583.  A plaintiff proves the existence of an association-in-fact enterprise by introducing "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit."  *Id*.  An association-in-fact enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," but it need not be a business-like entity with a hierarchical structure, a chain of command, or role differentiation. *Boyle v. United States*, 556 U.S. 938, 946, 948 (2009).

Further, to prevail on a civil RICO claim, a plaintiff must show that it has been injured "by reason of" a violation of RICO's criminal prohibitions. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016).  Showing injury "by reason of" a RICO violation requires a plaintiff to "establish both but-for cause and proximate cause." *Id.* (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)); *see also Waste Mgt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 965 (5th Cir. 2019).  "When a court evaluates a RICO claim for proximate cause, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see Allstate*

*Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015) (proximate cause is present where the injuries asserted were the "objective of the [RICO] enterprise").

### 1.      Pattern of racketeering activity

Plaintiff's RICO claim against Roebuck fails on the second element – a pattern of racketeering activity.[46]   In the complaint and RICO case statement Plaintiff lists only the following RICO predicate acts:

- During 2018, Defendant Buoyance made continuous solicitations by mail for memberships and subscriptions to its purported therapeutic spa locations advertising therapeutic flotation services that were substandard, administered by unqualified therapists and conducted in facilities that did not meet legal code and hygiene requirements.

- In the fall of 2018, Defendant Buoyance provided by email false business and financial information to the ultimate purchasers of its assets.

- In December 2018, Buoyance misrepresented to the purchasers of its assets that it intended to, and would, use the funds to, among other things, enhance the overall reputation of the flotation therapy business by funding and staging the float conference, an effort and undertaking that proved to be entirely false.

- Buoyance misrepresented to its purchasers that it intended to, and would transfer its leased facility to them as the new owners, which it failed to do, making it impossible for them to continue operating the spa facility.[47]

Plaintiff further alleges that Defendants, "[i]n furtherance of their scheme to defraud, and with the purpose of executing [the] scheme to defraud … used mail and email to defraud Plaintiff of hundreds of thousands of dollars" and "[t]hese activities consist of electronic messages which constitute interstate transmissions, and the transfer of monies in the interstate banking system between Defendants, Flot Nola, RESET, Roebuck and Breighner, caused by Defendant Roebuck, all in furtherance of the scheme to defraud …."[48]

---

[46] Defendants pretermit the question whether they can fairly be characterized as an association-in-fact enterprise. R. Doc. 24-1 at 7.

[47] R. Doc. 1 at 21-22; R. Doc. 14 at 12-13.

[48] R. Doc. 1 at 22; R. Doc. 14 at 13.

None of these allegations adequately states a predicate act of mail or wire fraud.  Mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice.'"  *Bridge*, 553 U.S. at 647 (quoting 18 U.S.C. § 1341).  "The gravamen of the offense is the scheme to defraud, and any 'mailing incident to an essential part of the scheme satisfies the mailing element.'"  *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 712 (1989)) (internal quotation marks omitted).  This is so "even if the mailing 'contain[s] no false information.'"  *Id.* (quoting *Schmuck*, 489 U.S. at 715). These same principles apply to wire fraud, which occurs whenever a person uses the interstate wires to effect a scheme or artifice to defraud.  *See Pasquantino v. United States*, 544 U.S. 349, 353 (2005).

The elements of mail or wire fraud, then, are "(1) a scheme to defraud that employed false material representations, (2) the use of mail or interstate wires in furtherance of the scheme, and (3) the specific intent to defraud."  *United States v. Hoffman*, 901 F.3d 523, 545 (5th Cir. 2018) (citing *United States v. Kuhrt*, 788 F.3d 403, 413-14 (5th Cir. 2015), and *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir. 2012)).  A "scheme to defraud" is measured by a broad "nontechnical standard, rooted in notions of moral uprightness, fundamental honesty, fair play, and right dealing," but it "must involve fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Robinson v. Standard Mortg. Corp.*, 191 F. Supp. 3d 630, 639-40 (E.D. La. 2016) (quotations and citations omitted). The Fifth Circuit defines the requisite intent to defraud as the defendant's acting "knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain" to the defendant. *See United States v. Morganfield*, 501 F.3d 453, 464 (5th Cir. 2007) (citation omitted).

The first alleged predicate act – *viz.*, Buoyance's using the mail to solicit memberships and subscriptions for allegedly substandard services – fails to allege fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure, because Plaintiff does not allege who (much less, that Roebuck) prepared or sent the mailings, who received them, what exactly in or about the mailings was fraudulent, or when the mailings were made.  Similarly, the second alleged predicate act – *viz.*, Buoyance's emailing false business and financial information to the ultimate purchasers of its assets – does not state who (much less, that Roebuck) sent the email, how the business and financial information was fraudulent, or when it was sent.  Further, there is no interstate connection alleged as to the email, and the Court cannot assume an interstate connection, especially since both Buoyance and the purchasers of its assets were located in North Carolina.   The  third  and  fourth  alleged  predicate  acts  –  *viz.*,  Buoyance's  alleged misrepresentations to the purchasers of its assets that it would stage float conferences and that it would  transfer  the  leased  facility  to  them  –  do  not  allege  who  made  the  alleged misrepresentations, when they were made, how they were fraudulent, or how they were made, including, notably, that the statements were even made via mail or wire.  Thus, the particularity required by Rule 9(b) is absent, and none of the predicate acts expressly alleged in the complaint and RICO case statement supports a claim of mail or wire fraud.

Plaintiff also fails to show that any of the predicate acts alleged in the complaint and RICO case statement form a continuous pattern of related activity that harmed Plaintiff.  In the complaint, Plaintiff alleges that "[a]ll predicate acts had the same purpose of defrauding Plaintiff of more than a million dollars, all for the personal enrichment of Defendant Roebuck and his associated legal entities."[49]  But Plaintiff fails to connect any of Buoyance's conduct in selling its services or its business (*i.e.*, the expressly alleged predicate acts) to the alleged scheme by

Roebuck to defraud Plaintiff.  In this scheme, Plaintiff claims to have been harmed by the actions of Flot Nola, Roebuck, and Breighner in providing it with false information to secure the lease of the premises, breaching the lease, converting funds, violating the consent judgment, and looting and vandalizing the premises.  This alleged harm could not have arisen from, and indeed is disconnected in time and place from, any alleged misrepresentations Buoyance – a business wholly separate from Flot Nola – made to its customers or the purchaser of its assets.  Moreover, although Plaintiff alleges that the scheme began in mid-2017 and ran through January 2020, and that there is a continuing thread of ongoing racketeering activity, Plaintiff fails to allege any facts to show that Roebuck's actions concerning Buoyance are at all related to his actions concerning Flot Nola or that Roebuck continues to fraudulently undertake additional spa therapy schemes. Therefore, Plaintiff has failed to allege the continuous pattern of related predicated acts and that it was harmed by those predicate acts.

In its memorandum in opposition to the motion for summary judgment, Plaintiff argues that the "[c]omplaint specifies the following predicate acts performed, or directed, by Roebuck":[50]

- He submitted, on or about Aug. 30, 2018, a Business Plan to Plaintiff by email with false, embellished and misleading statements about the success and viability of the proposed Flot Nola Spa business.

- That Business Plan also falsely embellished Defendant Roebuck's resume, falsely indicating his ability and background to develop and run the proposed float therapy business to be developed in Plaintiff's property.

- On Aug. 15, 2018, Roebuck provided, by email, misleading and false financial information and tax returns for Defendants Roebuck and Flot Nola.

- Sent by mail, on June 6, 2017, a False "Confidential Memo" to First Flot in connection with their [sic] purchase of the assets of Defendant Buoyance, misleading them in their [sic] acquisition of those assets.

---

[49] R. Doc. 1 at 22.
[50] R. Doc. 30 at 10.

17

- Sent an email to RTW Const. LLC containing false information about Plaintiff, seeking to create an illegal lien on Plaintiff's property.

- Directed a letter, on May 14, 2019, to First Flot, from Louisiana to North Carolina, alleging late or missing payments and then falsely claiming the right to foreclose on the assets that Defendant Buoyance had sold those purchasers.

- During 2019 and 2020, and perhaps earlier, Defendant Roebuck, operating through Defendants The Flot Conference, LLC and The International Therapeutic Floatation Conference, LLC made, by mail and email, solicitations for nonexistent therapeutic conferences, seeking, and obtaining, money from vendors and potential attendees in multiple states.  The emails and social media solicitations were made to customers and vendor lists of the various Defendants in multiple states on, at least Feb. 26, 2019, Jan. 15, 2020 and June 1, 2020.[51]

None of these acts is identified or pleaded in the complaint or RICO case statement as a predicate act of racketeering activity.[52]  Moreover, even assuming that they were listed in the complaint or RICO case statement, all of these supposed predicate acts are insufficiently pleaded under Rule 9(b).  The first and second alleged acts – *viz.*, Roebuck's submitting a business plan and resume to Plaintiff – fail to allege an interstate connection for the email or precisely what was false or misleading about the plan.  The third, fourth, and fifth alleged acts – *viz.*, Roebuck's transmittal of financial information and tax returns for himself and Flot Nola, his mailing of a "Confidential Memo" to the purchaser of Buoyance's assets, and his email to RTW – likewise do not specify interstate transmission or what was false or misleading about the financials, tax returns, or communication he sent.  Further, the sixth alleged act – *viz.*, Roebuck's letter to the purchaser of Buoyance – does not specify any interstate mailing or wire, which is consistent with Plaintiff's allegation in the complaint that Roebuck hand delivered this letter.  As to the seventh alleged act – *viz.*, Roebuck's solicitations for the therapeutic conferences – do not allege that

---

[51] *Id.* at 10-11 (specific citations to R. Doc. 1 omitted).
[52] R. Doc. 14 at 10-13.

Roebuck had the specific intent, at the time he sent the solicitations, not to hold the conferences. Further, there are no allegations that the fourth and seventh acts are connected in any way to Flot Nola's alleged breach of the lease, which is the essential dispute Plaintiff has with Roebuck and the root of Plaintiff's alleged harm. Thus, even if Plaintiff were granted leave to amend the complaint to add these predicate acts to its allegations, the acts are insufficient to allege a pattern of racketeering activity and thus to state a RICO claim against Roebuck for violation of § 1962(c).

## 2.     RICO injury

To have standing to bring a RICO claim, a plaintiff must plead an injury proximately caused by – that is, resulting directing from – the alleged RICO violations. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The injury Plaintiff pleads consists of the funds it advanced to Flot Nola for the build-out of the leased premises, which funds were allegedly lost as a result of their misappropriation by Roebuck and Breighner.  But just as the alleged wrongful acts of Flot Nola, Roebuck, and Breighner in connection with leasing the premises are *unrelated* to the alleged wrongful acts by Roebuck through and concerning Bouyance, Plaintiff's injury – loss of the funds constituting the tenant allowance – cannot be said to have been proximately caused by or resulted directly from Roebuck's allegedly wrongful representations to Bouyance's purchasers or consumers at an earlier time and distant place from the lease transaction with Plaintiff.  That Roebuck was engaged in the same line of work (spa therapy) – even if his conduct in operating these separate businesses was questionable – is not enough to link these isolated events and entirely distinct episodes, and thus to suggest that Roebuck's acts through Bouyance were a proximate cause of Plaintiff's injury arising from the lease.  "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient" to supply the requisite proximate cause.

*Hemi Corp. LLC v. New York*, 559 U.S. 1, 9 (2010) (because "the general tendency of the law, in regard to damages at least, is not to go beyond the first step," and "general tendency applies with full force to proximate cause injuries under RICO," and because the plaintiff's "theory of causation requires us to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement") (citation and alteration omitted); *Anza*, 547 U.S. at 458-59 (because direct victim of defendant's allegedly fraudulent failure to charge and remit taxes was the state, not the plaintiff who purportedly suffered a loss of customers from defendant's ensuing ability to cut its prices, the alleged injury [*i.e.*, offering lower prices] was attenuated and entirely distinct from the alleged RICO violation [*i.e.*, defrauding the state of taxes]).  In short, while Bouyance's purchasers and consumers were allegedly injured by Bouyance's misrepresentations via the solicitation of memberships and the sale of its assets, and while Plaintiff was allegedly injured by Roebuck and others via wrongful acts committed in connection with Flot Nola's lease, Plaintiff has alleged no facts to support the proposition that the Plaintiff's injury was proximately cause by Bouyance's actions; the episodes and associated injuries were separate and distinct.  Hence, Plaintiff has failed to plead a RICO injury and lacks standing to bring its RICO claim.  For this additional reason, Plaintiff's claim under § 1962(c) must be dismissed.

3.    **RICO conspiracy**

Plaintiff asserts that Defendants entered into a RICO conspiracy in violation of 18 U.S.C. § 1962(d).  When a plaintiff fails to state a substantive RICO claim under subsections (a), (b), or (c) of § 1962, however, a RICO conspiracy claim under § 1962(d) also fails.  *See Nolen v. Nucentric Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (citation omitted). Because Plaintiff failed to allege a RICO claim under § 1962(c), its RICO conspiracy claim

under § 1962(d) must also be dismissed.[53]

## C.  State-Law Claims

Section 1367(a) empowers a federal district court to hear in a civil action state-law claims that are related to an accompanying federal claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a).  However, § 1367(c)(3) permits a federal district court to decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction.  In determining whether to retain jurisdiction over pendent state-law claims, the court should consider the four statutory factors set out in § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity, with no single factor being dispositive.  *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011).  As a general rule, the court should dismiss state claims when the federal claims to which they are pendent are dismissed.  *Id.* at 161 (citing, *inter alia*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).  "[B]ut this rule is neither mandatory nor absolute; no single factor is dispositive, and [the Fifth Circuit] review[s] the district court's decision in light of the specific circumstances of the case at bar."  *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

This case was filed after there was already a case pending in state court that alleged many of the same state-law claims brought in this case.[54]  With dismissal of the RICO claims over which this Court had original jurisdiction, this case now contains only state-law claims.  As such, and in the interests of judicial economy and comity, the Court declines to exercise its discretion

---

[53] Further, a RICO civil conspiracy complaint must allege specifically an agreement to commit the predicate acts.  *Abraham*, 480 F.3d at 357 (citation omitted).  Because Plaintiff fails to allege an agreement between Defendants to commit any of the predicate acts, dismissal of the RICO conspiracy claim is warranted on this additional ground.

[54] R. Doc. 24 at 1 & n.1.

to retain jurisdiction over these state-law claims, and they are DISMISSED WITHOUT PREJUDICE.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' Rule 12(b)(6) motion to dismiss (R. Doc. 24) is GRANTED, and Plaintiff's RICO claims under 18 U.S.C. § 1962 (c) & (d) are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that this Court declines to exercise supplemental jurisdiction over Plaintiff's pendent state-law claims, and those claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 21st day of August, 2020.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE